UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| LAURA BROADSTONE, JULIE BOESCH, and RENEE BOESCH,<br><br>Plaintiffs,<br><br>v.<br><br>SHERMAN'S PLACE, INC.,<br><br>Defendant. | Case No. 15-1453 |

# ORDER AND OPINION

Now before the Court is Defendant's Motion [29] for Summary Judgment as to Plaintiff Renee Boesch. For the reasons set forth below, Defendant's Motion [29] is GRANTED.

## BACKGROUND[1]

Defendant, Sherman's Place, Inc. ("Sherman's"), is a corporation in the business of selling appliances, electronics, furniture, and mattresses. Sherman's has stores in Peoria, Normal, and Peru, Illinois. Plaintiff Renee Boesch[2] lived in Chicago for 11 years before she began working for Sherman's in August 2010 as a Human Resources Generalist. Her responsibilities included employee relations, employee complaints, maintaining policies and giving orientation training to new employees. Boesch's supervisor from August 2010 to September 2014 was John Willis, Sherman's Business and Accounting Manager. SOF ¶¶ 1–8.

In July 2012, Boesch resigned her position at Sherman's and moved back to Chicago. However, after two weeks she called John Willis and asked for her job back. Sherman's agreed,

---

[1] The following facts have been distilled from Defendant's Statement of Material Facts ("SOF") and Plaintiff's Additional Material Facts ("AMF").
[2] For the remainder of this Opinion, "Boesch" will refer to Plaintiff Renee Boesch.

1

and Boesch returned to her prior position at Sherman's on August 13, 2012. In June 2013, Sherman's President Paul Sherman appointed Boesch to Sherman's Ownership Thinking Team. As part of the Ownership Thinking Team, Boesch initially received a 0.25% share of Sherman's quarterly profits, which was later increased to 0.5%. Boesch remained on the Team until her resignation on January 28, 2015, at which point the Team consisted of 12–15 individuals out of approximately 150 total employees. Boesch was given a pay increase and promoted to Human Resources Manager on August 29, 2013, and she began reporting directly to President Paul Sherman beginning September 1, 2014. SOF ¶¶ 9–18.

In November 2013, Boesch began dating a Sherman's coworker, David Weiss. Weiss was Paul Sherman's nephew. Boesch and Weiss purchased a home together in June 2014 and became engaged to be married later that same month. Boesch and Weiss did not supervise each other, and throughout their relationship they kept personal arguments outside the workplace. The engagement ended in September 2014 when Boesch moved out of the home after an argument with Weiss. The day they returned to work following the breakup, Paul Sherman sat down with Boesch and Weiss and told them he expected them to treat each other fairly, work with each other, and to be professionals. Thereafter, Boesch and Weiss rarely spoke to each other. According to Boesch, Weiss once glared at her and then smiled and began laughing at her. Additionally, Weiss would wear his engagement ring on his right hand, and toward the end of her employment Weiss would wear the ring on his wedding ring finger when he went into meetings where Boesch was present. SOF ¶¶ 19–33.

Sherman's used two types of performance reviews during Boesch's tenure, a monthly one-on-one performance review and an annual core values review. Boesch had four performance reviews with Paul Sherman after the breakup. Three reviews were regular monthly performance

reviews in September and October 2014 and January 2015. Boesch also had an annual core values review on December 11, 2014. That review noted that Boesch had an "[i]nfectiously positive attitude" and was "a joy to be around," that she had "taken [her] position/role to new levels without structured training or being given a plan" and that was "as close to the definition of ambition as [Paul Sherman] could get," and that she had not yet "fully come to terms with how much others respect [her] and [her] abilities." Doc. 29-1, at 85. Boesch did not consider the core values review to be negative. On the afternoon of December 11, 2014, Paul Sherman again met with both Weiss and Boesch to talk about his expectations for them going forward, which he memorialized in identical employee transaction forms for Weiss and Boesch. Boesch thought the meeting occurred because "Dave was saying that we were treating him unfairly," and testified that "the truth is Dave just didn't get along with people." SOF ¶¶ 34–43.

In December 2014, Boesch started looking for jobs exclusively in Chicago. On January 13, 2015, Boesch sent a cover letter and résumé to Morgan Lewis in Chicago stating that she was "exclusively seeking employment in Chicago, my favorite city in the world and can relocate with proper notice." She also explained that she was a "top manager and profit sharer in the company." SOF ¶¶ 44–47.

On January 28, 2015, Boesch learned that Weiss had filmed a commercial for Sherman's in the home the two still jointly owned. She became angry and emailed Weiss asking why he had not asked her first or secured her consent. Before Weiss responded, Boesch emailed a coworker stating that she was going to go home for the day and talk to her family. Weiss later replied to her email and apologized, satiating "I'm sorry, I didn't even think about it or think you'd have a problem with it since it was to help promote our mutual employer." Doc. 29-1, at 92. Boesch and Weiss then agreed to meet in the lower showroom to discuss the matter. The discussion led to a

3

shouting match, during which Weiss said Boesch was crazy for her reaction to the commercial and stated that they should go to Paul Sherman's office to discuss it.[3] Boesch refused to go to Paul Sherman's office with Weiss and instead went home without speaking to Paul Sherman about the argument.[4] SOF ¶¶ 48–56.

On the evening of January 28, 2015, Boesch emailed Paul Sherman to inform him of her immediate resignation. She also sent multiple emails to Weiss expressing her personal and professional opinion of him. Boesch felt that following the breakup, Weiss manipulated her because he was Paul Sherman's nephew, and that the Sherman family wanted her out of the organization. When Boesch left Sherman's, her salary was $51,000 per year.[5] Boesch subsequently moved to Chicago to take an HR position with PHD media, where she currently makes $95,000 per year plus various benefits.[6] SOF ¶¶ 57–64.

The following statements are culled from Plaintiff's Additional Material Facts. Doc. 41. Plaintiff alleges that Weiss became verbally abusive to Boesch shortly after the holidays of 2013, and would verbally abuse her about twice a week. Weiss's parents knew that he had anger management problems. When they were dating, Weiss would send Boesch text messages constantly at work. AMF ¶¶ 1–10.

---

[3] Plaintiff lists this fact as disputed, but does not dispute any assertion therein. Rather, Plaintiff adds additional facts. This practice does not comply with Rule 56 of the Federal Rules of Civil Procedure or this Court's Local Rule 7.1(D). See *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 549 (7th Cir. 2017) (noting that counsel's failure to comply with local rule was willful and district court was "well within its discretion" to consider only evidence presented in conformity with local rules).

[4] Plaintiff lists this fact as both admitted and disputed. Again, Plaintiff does not actually dispute the asserted fact— Boesch went home without speaking to Paul Sherman. Rather, Plaintiff again lists additional facts or explanations. See *Frakes*, 872 F.3d at 549 (noting that the plaintiff "listed admitted facts as disputed and added supplementary explanations to them").

[5] Plaintiff neither admits nor denies this fact. The Court therefore considers it admitted.

[6] Plaintiff lists this fact as disputed but only adds supplementary explanations. The Court therefore considers it admitted.

## LEGAL STANDARD

Summary judgment is appropriate where the movant shows, through "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations … admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In resolving a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

In order to withstand a motion for summary judgment, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When presented with a motion for summary judgment, the Court must construe the record "in the light most favorable to the nonmovant and avoid[] the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). If the evidence, however, is "merely colorable, or is not significantly probative or merely raises 'some metaphysical doubt as the material facts,' summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50. Thus, in order to overcome the undisputed facts set forth in a defendant's motion for summary judgment, a plaintiff cannot rest on the allegations in his complaint but must point to affidavits, depositions or other evidence of an admissible sort that a genuine dispute of material fact exists between the parties. Fed. R. Civ. P. 56(e)(2); *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

**DISCUSSION**

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). Title VII covers "two types forms of employment discrimination: so-called discrete acts of discrimination, such as termination, failure to promote, denial of transfer, or refusal to hire, ... and acts that create a hostile workplace, which are different in kind from discrete acts, and do not require tangible adverse employment actions." *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 683–84 (7th Cir. 2010) (internal citations omitted).

Plaintiff alleges in her Complaint that she "was forced to leave her employment at Sherman's because of the sex discrimination and retaliation against her for reports of sex discrimination by a work environment she could no longer endure as specifically alleged in Part III ¶ 90–107." Doc. 1, at 45. Plaintiff's Response[7] to Defendant's Motion for Summary Judgment states Boesch's claims somewhat differently, and does not mention retaliation:

> Renee resigned because she had no protection at work from David Weiss and because of the increased scrutiny of Paul Sherman. The sex discrimination is shown by John Willis' statement to Renee that even though Julie Boesch and Laura Broadstone were doing great as salespeople Paul Sherman would not be convinced women are capable. John Willis replied no; he is a misogynist.

Doc. 41, at 9. The Court will begin by attempting to identify the specific claims Plaintiff is advancing here.

**(1) No Adverse Employment Action**

Discrimination claims based on discrete acts are often analyzed under the *McDonnell Douglas* burden-shifting approach, though the legal standard is "simply whether the evidence

---

[7] Plaintiff's Response is not a model of clarity. It consists of ten pages, inclusive of the certificate of service. Of those ten pages, one is dedicated to the argument section, which includes one citation to case law and focuses entirely on constructive discharge. *Id.* at 8.

would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Under the *McDonnell Douglas* approach, "the plaintiff has the initial burden of establishing that (1) she is a member of a protected class, (2) she performed reasonably on the job in accord with her employer['s] legitimate expectations, (3) despite her reasonable performance, she was subjected to an adverse employment action, and (4) similarly situated employees outside of her protected class were treated more favorably by the employer." *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017) (internal citations omitted). The Court will focus on the third element—whether Boesch was subjected to an adverse employment action—because it is disposes of any claim for discrimination based on a discrete act.

An adverse employment action is one which affects the "terms, conditions, or privileges of employment." 42 U.S.C. § 2000e–2(a)(1). "Determining what is materially adverse will normally 'depend on the facts of each situation.' " *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 691 (7th Cir. 2001) (citing *Bryson v. Chi. State Univ.*, 96 F.3d 912, 916 (7th Cir. 1996)). Although courts define the term broadly, "not everything that makes an employee unhappy is an actionable adverse action." *Id*. (citing *Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7th Cir. 1996)). "In assessing adversity, [the Court] may examine both quantitative and qualitative changes in the terms or conditions of plaintiff's employment. *Id*. (citing *Dahm v. Flynn*, 60 F.3d 253, 257 (7th Cir. 1994)).

Putting aside Boesch's resignation, which the Court will address below, Plaintiff points to Boesch's confrontation with Weiss and the "increased scrutiny" of Paul Sherman to support her discrimination claim. Even if true, neither of these facts are sufficient establish an adverse

7

employment action. First, Weiss's conduct towards Plaintiff is largely irrelevant. He was her coworker, not supervisor, and coworkers are generally unable to affect the terms or conditions of another's employment. Second, Boesch's dissatisfaction with the frequency and/or content of her performance reviews does not suffice to establish an adverse employment action based on the facts presented here. The undisputed facts indicate that the three regular monthly performance reviews and one annual core values review Boesch received between September 2014 and January 2015 were normal, routine, monthly and yearly reviews. Doc. 29-1, at 26 (Boesch Dep. at 131–32). Significantly, Plaintiff does not dispute that Boesch did not consider the core values review to be negative. Doc. 29, at 7; Doc. 41, at 4. Nor could she—the core values review Boesch now complains of noted that she had an "[i]nfectiously positive attitude" and was "a joy to be around," that she had "taken [her] position/role to new levels without structured training or being given a plan" and that was "as close to the definition of ambition as [Paul Sherman] could get," and that she had not yet "fully come to terms with how much others respect [her] and [her] abilities." Doc. 29-1, at 85. In sum, Plaintiff' claim that she was subjected to more frequent, negative reviews is flatly contradicted by the record. Plaintiff has therefore failed to establish an adverse employment action.

**(2) No Severe or Pervasive Conduct**

Unlike a claim for employment discrimination based on a discrete act, a plaintiff may survive summary judgment on a claim of discrimination based on sexual harassment or hostile work environment without showing an adverse employment action. See *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 752 (1998); *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 683–84 (7th Cir. 2010). To survive summary judgment on a hostile work environment claim, Boesch needs to provide evidence from which a jury reasonably could find "(1) that the work environment was

both subjectively and objectively offensive; (2) that the harassment was based on membership in a protected class; (3) that the conduct was severe or pervasive; and (4) that there is a basis for employer liability." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014); *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). District courts must "determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher*, 524 U.S. at 787–88 (internal citations omitted).

Here, Plaintiff alleges that Weiss "bullied" her by glaring at her, wearing his wedding ring on his left hand during meetings, filming a commercial at their jointly-owned house, and yelling at her at work. Doc. 41, at 8–9. From the outset, the Court notes that Plaintiff has failed to show (and does not explain) how Weiss's alleged conduct was motivated by Boesch's gender; feuds between former would-be spouses cannot be attributed to unlawful discrimination simply because a scorned lover is differently gendered. See, e.g., *Simpson v. Borg-Warner Auto., Inc.*, 196 F.3d 873, 878 (7th Cir. 1999) ("The mere fact that she is a woman is insufficient to support an inference that the action was gender-motivated.").

Additionally, Plaintiff's allegations are not sufficiently severe or pervasive to create an actionable hostile work environment claim. Most of Weiss's alleged conduct—glaring at Boesch, wearing a wedding ring, and filming a commercial in a jointly-owned house—falls well short of the severity or frequency necessary to sustain a hostile work environment claim. *Faragher*, 524 U.S. at 788 ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely

serious) will not amount to discriminatory changes in the terms and conditions of employment.") (internal citations omitted).

The only allegation that requires further discussion is the argument between Boesch and Weiss on her last day of work. In her Response, Plaintiff states that "Weiss pushed her up against a wall and would not let her move which led to Renee's departure from employment." Doc. 41, at 5. However, the citation to the record that Plaintiff provides does not accurately reflect Plaintiff's own testimony. The relevant portion of Plaintiff's deposition transcript is as follows:

> [Boesch]: I emailed Dave. And I said, "Did you film a commercial in the house?" …We agreed to meet down in the lower showroom to discuss so that we were out of earshot of other people. …
> And he came barreling through the doors, and he started shouting at me. And I kept trying to move away from him, and he kept backing me into that corner there. And he was waving his arms like this at me (indicating) and screaming at me. "You're a fucking crazy bitch. Fucking get over me. I made this commercial for the benefit of our mutual employer."
> It was horrible. I got so upset I was bright red from hiving, which I'm prone to do, that I was almost hyperventilating. He said—I said, "This is in bad taste. Please take the commercial down." He continued screaming at me and calling me every name in the book. And then he said, "Fine. We're going to fucking go to Paul's fucking office and we'll see what he has to say about it." And he started to storm away and I said, "I'm not going in there with you without a witness." So I went upstairs to get my good friend John Willis to help me, and he told me that he would help.

Doc. 29-1, at 31–32 (Boesch Dep. at 112–13). Based on Boesch's own testimony, Plaintiff's claim in her Response that Weiss "pushed her up against a wall" is factually unsupported. This is significant to the Court's analysis, as "the most heavily emphasized factor in [hostile work environment] cases is whether there was inappropriate touching." *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 685 (7th Cir. 2010). And although "[o]ne instance of conduct that is sufficiently severe may be enough," Boesch's isolated, non-physical argument in the showroom with Weiss is insufficient to create a genuine issue of material fact on Plaintiff's hostile work environment claim. *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 686 (7th Cir. 2010).

### (3) No Constructive Discharge

Resolution of the final issue before the Court is aided by the fact that it is included in Plaintiff's Response brief. Specifically, Plaintiff alleges that Boesch was constructively discharged from Sherman's because "she had no protection at work from David Weiss and because of the increased scrutiny from Paul Sherman." Doc. 41, at 9. In support, Plaintiff relies on *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673 (7th Cir. 2010), for the proposition that constructive discharge may be found where there is a threat to a plaintiff's personal safety. *Id*. at 679.

In order to survive summary judgment on her constructive discharge claim, Plaintiff must show "working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004). "Working conditions for constructive discharge must be even more egregious than the high standard for hostile work environment because 'in the 'ordinary' case, an employee is expected to remain employed while seeking redress.' " *Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1050 (7th Cir. 2000) (citing *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 886 (7th Cir. 1998)).

The Seventh Circuit has recognized two forms of constructive discharge claims, but both require an intolerable work environment. *Chapin*, 621 F.3d at 679. The first form of constructive discharge occurs when an employee resigns due to alleged discriminatory harassment. *Id*. "Such cases require a plaintiff to show working conditions even more egregious than that required for a hostile work environment claim[.]" *Id*. As discussed above, Boesch cannot establish a hostile work environment claim. It follows that she cannot prevail on under this theory of constructive discharge. See *Chapin*, 621 F.3d at 679 ("One threat and raised voices would not rise to the level of a hostile work environment, and so it also cannot be the basis for Chapin's constructive

11

discharge claim."). The second form of constructive discharge occurs "when an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated …." *Id*. Plaintiff has not alleged, and nothing in the record suggests, that Boesch would have been terminated had she not resigned. Accordingly, Defendant is entitled to summary judgment on Plaintiff's constructive discharge claim.

## CONCLUSION

For the reasons set forth above, Defendant's Motion [29] for Summary Judgment as to Plaintiff Renee Boesch is GRANTED.


Signed on this 30th day of November, 2017.

s/ James E. Shadid
James E. Shadid
Chief United States District Judge