UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LAURA BROADSTONE, JULIE BOESCH, and RENEE BOESCH, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 15-1453 |
| SHERMAN'S PLACE, INC., | ) ) | |
| Defendant. | ) | |

## ORDER AND OPINION

Now before the Court is Defendant's Motion [30] for Summary Judgment as to Plaintiff Julie Boesch. For the reasons set forth below, Defendant's Motion [30] is GRANTED.

### BACKGROUND[1]

Defendant, Sherman's Place, Inc. ("Sherman's"), is a corporation in the business of selling appliances, electronics, furniture, and mattresses. Sherman's has stores in Peoria, Normal, and Peru, Illinois. Plaintiff Julie Boesch[2], the twin sister of co-Plaintiff Renee Boesch, began working for Sherman's on March 21, 2014 as a commission-based sales professional. Boesch excelled at her job; she was one of four salespeople to ever exceed $200,000 in monthly sales, and she consistently ranked in the top five salespeople each month. Her success led to her inclusion on Sherman's lifestyle team—a select group of salespeople authorized and trained to sell high-end appliances that generated greater commissions—in September 2014, after working for Sherman's for about six months. In fact, Boesch was placed on the lifestyle team faster than any other salesperson at Sherman's. Boesch was also top-ranked in Sherman's Satmetrix system,

---

[1] The following facts have been distilled from Defendant's Statement of Material Facts ("SOF").
[2] For the remainder of this Opinion, "Boesch" will refer to Plaintiff Julie Boesch.

1

which was an online survey system that allowed customers to rate Sherman's salespeople. SOF ¶¶ 1–16.

Boesch's relationship with other Sherman's employees was more complicated. In November 2014, fellow salesperson Kevin Gualandi told Boesch to "shut the fuck up" after they had a disagreement about another coworker. She reported the incident to one of her supervisors, Jim Torok, immediately, and the incident was resolved after Gualandi apologized. Boesch also felt she lost a sale when salespersons Joe Moon and Tim Kipfer made an insensitive comment to one of Boesch's customers. Paul Sherman told Moon and Kipfer not to do it again, but Boesch felt that they should have been disciplined. On January 1, 2015, Boesch had a dispute with salesperson Dustin Leon about two large sales. According to Boesch, Leon had a reputation for stealing sales, and five other (male) salespeople had also complained about Leon's habits. The following business day, Boesch and Leon sat down with supervisors Tony Hnilicka and Jim Torok to discuss the situation, which was resolved when Leon apologized and the commission was split between the two. SOF ¶¶ 17–25.

Toward the end of 2014, salesperson Justin Garza accused Boesch of stealing his Tempurpedic sale, which was one of the highest commission items of all Sherman's products. Boesch reported the situation to Torok immediately and Torok spoke to Garza about it. Torok did not require Boesch to split the commission, and she and Garza remained friends afterwards. Also in 2014, Boesch spoke to others at Sherman's about what she perceived to be unfair treatment of Sherman's salespeople generally, including 100% commission-based wages, not being paid for training, deductions from their commissions, and not getting consistent lunch breaks. SOF ¶¶ 26–27.

Renee Boesch's employment with Sherman's, her relationship with David Weiss, and her resignation are recounted in a separate opinion and will only be discussed here as necessary. Julie Boesch testified that she had no issues with other salespeople until approximately two to three months before her termination, when "[t]hings started to speed up for [her]" and became uncomfortable after Renee and Weiss ended their relationship. Immediately after Renee's resignation as the Human Resources Manager on January 29, 2015, Boesch missed multiple days of work because of a back injury.[3] Shortly after she returned to work, she became upset about an interaction with a customer, turned red, and went into Sherman's kitchen exclaiming that she "just want[s] to go the fuck home right now." SOF ¶¶ 28–36.

On February 9, 2015, Paul Sherman and Tasha Scott (Sherman's furniture buyer) met with Boesch, expressed concern over her attendance and outburst, and explained their expectations going forward as documented in an employee transaction form.[4] Boesch felt that the meeting deviated from protocol because her actual managers were not involved and because Paul Sherman did not usually insert himself in sales matters. Rather, Boesch believed that she received the employee transaction form because of what happened between Renee and Weiss.[5] SOF ¶¶ 37–39.

Sometime after 5:00 p.m. on February 9, 2015, Boesch entered the Human Resources loft and took a blue folder from the Human Resources desk.[6] When John Willis learned that Boesch had taken a folder, he made her give it back.[7] Willis brought Paul Sherman the folder and

---

[3] Plaintiff lists Defendant's 35th statement of fact as both undisputed and disputed.
[4] Plaintiff lists Defendant's 37th statement of fact as disputed, but simply repeats the asserted fact and offers supplemental explanations.
[5] Plaintiff lists Defendant's 39th statement of fact as disputed, but simply repeats the asserted fact and offers supplemental explanations.
[6] Plaintiff lists Defendant's 40th statement of fact as disputed, but simply repeats the asserted fact and offers supplemental explanations.
[7] Plaintiff neither admits nor denies Defendant's 41st statement of fact.

notified him that Boesch stole personnel records from the Human Resources office immediately after Willis left work for the evening.[8] The folder contained personnel records for Bob Fitzgeralds, a former salesperson.[9] Paul Sherman sent Boesch home and told her he would call her the next day after he thought the matter over.[10] Paul Sherman called Boesch on February 10, 2015, and terminated her employment because of her theft of confidential personnel records. SOF ¶¶ 40–46.

Plaintiff's Response contains 105 purported additional material facts. Doc. 40, at 10–31; AMF ¶¶ 1–105. Of the 105 purported additional material facts, paragraphs 1 through 77 are wholly unrelated to Julie Boesch. Paragraphs 78 through 96 merely repeat the factual allegations in Defendant's Statement of Facts. The remaining paragraphs contain a medley of immaterial facts, facts repeated from Defendant's statement of facts, and inadmissible hearsay. Counsel's willful failure to comply with the Local Rules regarding summary judgment is discussed in more detail, *infra*.

## LEGAL STANDARD

Summary judgment is appropriate where the movant shows, through "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations … admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In resolving a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material

---

[8] d Plaintiff lists Defendant's 42nd statement of fact as disputed, but simply repeats the asserted fact and offers supplemental explanations.
[9] Plaintiff lists Defendant's 43rd statement of fact as disputed, but simply repeats the asserted fact and offers supplemental explanations.
[10] Plaintiff lists Defendant's 44th statement of fact as disputed, but simply repeats the asserted fact and offers supplemental explanations.

dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

In order to withstand a motion for summary judgment, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When presented with a motion for summary judgment, the court must construe the record "in the light most favorable to the nonmovant and avoid[] the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). If the evidence, however, is "merely colorable, or is not significantly probative or merely raises 'some metaphysical doubt as the material facts,' summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50. Thus, in order to overcome the undisputed facts set forth in a defendant's motion for summary judgment, a plaintiff cannot rest on the allegations in his complaint but must point to affidavits, depositions or other evidence of an admissible sort that a genuine dispute of material fact exists between the parties. Fed. R. Civ. P. 56(e)(2); *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

## DISCUSSION

**(1) Plaintiff's Counsel Failed to Comply with Local Rule 7.1(D)**

The Federal Rules of Civil Procedure and the Local Rules for the Central District of Illinois both prescribe "rules." A rule is "a principle of guidance that has a close relation to individual conduct and method, or a desire for order and discipline within a group. Typically it implies restriction for the sake of achieving an articulable end, such as conformity to a standard or uniformity of procedure." Rule, *Bryan A. Garner*, GARNER'S DICTIONARY OF LEGAL USAGE. The committees responsible for promulgating these directives could have instead implemented the "Federal Suggestions for Civil Procedure" or the "Local Recommendations for the Central

5

District of Illinois," but they chose the term "rule" instead. These rules are thus mandatory; they are meant to be followed.

Plaintiff's counsel has failed to follow these rules. For example, Local Rule 7.1(D)(2)(b) requires that the response to the opposing party's statement of undisputed material facts contain separate subsections indicating undisputed material facts, disputed material facts, disputed immaterial facts, undisputed immaterial facts, and additional material facts. Plaintiff's Response, on the other hand, does not identify which facts are immaterial. Plaintiff counsel's failure to comply with the Local Rules was also willful: counsel has been admonished by this Court multiple times for violating the same rule, yet knowingly chose to violate the rule again. See, e.g., *McMahon v. Dunlap Cmty. Unit Sch. Dist. No. 323*, No. 15-1269, 2017 WL 1319812, at *3 (C.D. Ill. Apr. 6, 2017); *Troeger v. Minnesota Life Ins. Co.*, 200 F. Supp. 3d 745, 748 (C.D. Ill. 2016); *Frakes v. Peoria Sch. Dist. No. 150*, No. 12-1329, 2015 WL 5050256, at *1 (C.D. Ill. Aug. 26, 2015), *aff'd*, 872 F.3d 545 (7th Cir. 2017).

Counsel's failure to follow the Local Rules extends beyond Rule 7.1(D)'s labeling requirements. For example, Defendant's 35th statement of fact provides, "[i]mmediately following her sister's resignation as the Human Resources Manager on January 29, 2015, Boesch missed multiple days of work." Doc. 30, at 7. Plaintiff lists this as both undisputed and disputed, and states, "Plaintiff denies. She missed work after her sister resigned because she threw her back out, contacted her managers as required by Shermans policy, and took time off work. She tried to go back to work too soon, threw it out again, and had to take more days off." Doc. 40, at 6. What, then, does Plaintiff deny? Nonsensical responses such as these are not "even remotely helpful to resolving the issues succinctly framed by Rule 56." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994). Nor is counsel's response to statement 35 an aberration; the

responses to statements 37, 39, 40, 42, 43, and 44 also list facts as disputed immediately before repeating the statement, often nearly verbatim, along with multiple paragraphs of supplemental information.

The section of Plaintiff's Response containing 105 purported additional material facts also deserves discussion. See Doc. 40, at 10–31; AMF ¶¶ 1–105. As previously stated, the 105 purported additional material facts, paragraphs 1 through 77 are wholly unrelated to Julie Boesch, and paragraphs 78 through 96 largely repeat the factual allegations in Defendant's Statement of Facts. Plaintiff's counsel prefaces this section of the Response with an "Introductory Note" explaining that the additional material facts are the same as those contained in Plaintiff Broadstone's Response (Doc. 37), because "Julie Boesch is relying upon the same evidence of top female salespersons, Laura Broadstone, Julie Boesch, and Gina Giarrante, being terminated for pretextual reasons and being treated differently than men to avoid any contention of waiver." Doc. 40, at 10. "Whether evidence of the treatment of other employees is "relevant depends on a variety of factors, including 'how closely related the evidence is to the plaintiff's circumstances and theory of the case.' " *Graham v. Town of Normal*, No. 07-CV-1284, 2010 WL 582608, at *8 (C.D. Ill. Feb. 10, 2010) (quoting *Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 529 (7th Cir. 2008)). While the Court does not fault counsel for trying to preserve an argument, wholesale copying and pasting of 105 purported additional material facts from one response to the next is not the proper way of doing so, especially when the circumstances and actors involved in Plaintiff Broadstone and Boesch's termination were different.

Finally, the argument section of Plaintiff's Response fails to comply with the Local Rules because it "begin[s] with pretext." Doc. 40, at 32. Under Local Rule 7.1(D)(2)(c), nonmovants must, "[w]ith or without additional citations to authorities, respond directly to the argument in

7

the motion for summary judgment, for example, by explaining any disagreement with the movant's explanation for each point of law, why a point of law does not apply to the undisputed material facts, why its application does not entitle movant to relief or why, for other reasons, summary judgment should not be granted." By beginning with pretext, counsel failed to address Defendant's arguments regarding a prima facie case, which Plaintiff has the burden of establishing before pretext is even examined. See *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017).

This Court has previously remarked on counsel's shortcomings with respect to summary judgment responses in *Frakes*.

> This failure to follow the Local Rules requires the Court to do an extensive scouring of the record to determine if these are actual disputed facts or simply undisputed facts with a supplemental explanation from Plaintiff's counsel, which would be more appropriately laid out in Plaintiff's Statement of Additional Material Facts. While there may be some legitimate rationale to Plaintiff's counsel's actions, using this method as an attempt to survive summary judgment is not appropriate. When Plaintiff unnecessarily lists facts that are undisputed as disputed or states that a fact is "admitted, but its not" it makes it difficult for the Court to identify which facts are actually in dispute. Accordingly, the Court will not consider Plaintiff's supplementary explanation to any admitted fact. In addition, the Court will deem admitted any facts Plaintiff stated are "admitted, but disputed".

*Frakes v. Peoria Sch. Dist. No. 150*, No. 12-1329, 2015 WL 5050256, at *1 (C.D. Ill. Aug. 26, 2015), *aff'd*, 872 F.3d 545 (7th Cir. 2017). On appeal, the Seventh Circuit made the following observation:

> Even if Local Rule 7.1(D) was merely a "requirement of form" Frakes would have no recourse. A "local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply." Fed. R. Civ. P. 83(a)(2). Here, Frakes's attorney's failure to comply was willful, and the district court's enforcement of its local rules did not cause Frakes to lose any rights. The district court noted that Frakes's counsel was admonished by the court for violating the same local rule in earlier summary judgment briefings, yet counsel knowingly chose to violate the rule again. Further, Frakes was given a fair opportunity to oppose summary judgment. Any

8

failure to properly support her argument with evidence was her own doing. *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 549 (7th Cir. 2017). Although counsel's failure to follow the Local Rules extends well beyond the summary judgment response in *Frakes*, the Court recognizes that the Seventh Circuit's decision was issued after the responses in the instant case were filed. For that reason, the Court will attempt to look past the deficiencies in the Response and analyze whether a genuine dispute of fact exists requiring a trial. Future responses that fail to comply with the Local Rules will not receive the same benefit.[11]

**(2) Discrimination**

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). Title VII covers "two types forms of employment discrimination: so-called discrete acts of discrimination, such as termination, failure to promote, denial of transfer, or refusal to hire, ... and acts that create a hostile workplace, which are different in kind from discrete acts, and do not require tangible adverse employment actions." *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 683–84 (7th Cir. 2010) (internal citations omitted).

Discrimination claims based on discrete acts are often analyzed under the *McDonnell Douglas* burden-shifting approach, though the legal standard is "simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Under the *McDonnell Douglas* approach, "the plaintiff has the initial burden of establishing that (1) she is a member of a protected class, (2) she performed reasonably on the job in accord with her employer['s]

---

[11] Counsel knows better—he is an experienced litigator who has practiced for over 30 years in federal courts. The Court has time and time-again granted him some leeway. Counsel is admonished to perform to his capabilities.

legitimate expectations, (3) despite her reasonable performance, she was subjected to an adverse employment action, and (4) similarly situated employees outside of her protected class were treated more favorably by the employer." *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017) (internal citations omitted). "If the plaintiff satisfies that burden, then the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *Id*.

Here, it is undisputed that Julie Boesch was a member of a protected class (female). However, Defendant argues that Boesch cannot establish that she was meeting her employer's legitimate expectations because she was terminated for taking documents from the human resources area, which was contrary to Sherman's core values. Doc 30, at 11. Plaintiff's Response recites the *McDonnell Douglas* framework to establish a prima facie case, but her argument "begin[s] with pretext" rather than addressing Defendant's argument directly. Doc. 40, at 31–32. Nonetheless, the gist of Plaintiff's argument is that "[s]he was fired for retrieving a folder— which if confidential would have been in a file cabinet—that contained information on the departure from employment of an employee which was not confidential." *Id*. at 32. Plaintiff does not attempt to define the term "confidential," but she does cite to Paul Sherman's deposition testimony to support her argument. Paul Sherman testified, in relevant part, as follows:

> Q. Okay. How did Julie Boesch's employment come to your attention on her last day?
> A. I was notified that she had stolen personnel records.
> Q. Who told you that?
> A. John Willis.
> Q. Did he bring to you the records that were—he believed to be stolen?
> A. Yes.
> Q. Was it in a file folder?
> A. Yes.
> Q. And was it one page if you recall?

> A. It was very few pages. It could have been a single page. It could have been only a few.
>
> Q. Do you remember the contents of what was in there?
>
> A. It was regarding a former employee, some paperwork relating to a man named Bob Fitzjerrells [sic] who was also a salesperson.
>
> Q. Had he transferred or left employment?
>
> A. Both actually. He had transferred from one store to another and resigned.
>
> ***
>
> Q. Was there anything confidential about the fact that the employee had left employment and been transferred?
>
> A. Are you asking if it was common knowledge that he had left the company?
>
> Q. Yes.
>
> A. It was not confidential.
>
> ***
>
> Q. And you looked at the—at some point, you looked at the file; and did you make a decision on Julie Boesch's employment then, or did you wait until you talked to her?
>
> A. I did not make a decision on her employment until after I had asked her to go home that day.
>
> Q. After you talked with John Willis, did you and John Willis have a conversation with Julie Boesch?
>
> A. Yes.
>
> Q. And the subject of the conversation was this file folder?
>
> A. Correct.
>
> Q. And do you recall what you said to her and what she said to you?
>
> A. She said that she did not know what was in it and thought it was Renee's resumes.
>
> Q. And what did you say?
>
> A. That that is not credible and that she would have gone into personnel record files to obtain that.
>
> Q. Did she have a response?
>
> A. Nothing that I recall.
>
> Q. Did she ever tell you that Renee had told her she had printed out some hard copies of her resume and asked her to get them?
>
> A. I don't recall the specifics beyond her mentioning that, "I went to get her resumes."
>
> Q. Would there have been anything inappropriate if there had been hard copies of Renee's resume, a group of them, for Julie to pick them up for her?
>
> A. Yes. For an employee to go into the HR office and take out files without requesting permission is unacceptable.

Doc. 30-2, at 11–12 (Sherman Dep. at 12–19).

Plaintiff cannot establish that she was meeting her employer's legitimate expectations for two reasons. First, Plaintiff's argument that the information in the folder was not confidential

misstates Sherman's testimony. Sherman testified that the *fact* that a former employee was no longer with the company was not confidential; he did not state that Sherman's *personnel records* were not confidential. Second, whether or not personnel records were confidential is immaterial. Sherman testified that it was unacceptable "for an employee to go into the HR office and take out files without requesting permission." Sherman Dep. at 19. Plaintiff has failed to rebut this point entirely. Because no dispute exists that Plaintiff took personnel files from the HR office without permission, or that such action violated Defendant's legitimate expactions, she has failed to establish the second element of a prima facie case of discrimination.

For the sake of completeness, the above reasoning also precludes Plaintiff from establishing or rebutting the remaining elements of the *McDonnell Douglas* framework. Again, Plaintiff cannot establish the third element because she did not meet her employer's legitimate expectations. Nor can she establish that similarly situated employees outside of her protected class were treated more favorably; Boesch has not identified a single comparator who stole or took files from the HR office without authorization. Similarly, Defendant's stated reason for terminating Boesch—taking the personnel file without permission—is a legitimate, nondiscriminatory reason for her termination and is entirely consistent with Paul Sherman's testimony. "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." *Bates v. City of Chicago*, 726 F.3d 951, 956 (7th Cir. 2013). Having disposed of Plaintiff's "confidential" argument, there is nothing in the record to suggest that Paul Sherman's sated reason was dishonest. Accordingly, Defendant is entitled to summary judgment on Julie Boesch's discrimination claim.

**(3) Retaliation**

Defendant also moves for summary judgment on Boesch's retaliation claim. Title VII "prohibits discriminating against an employee 'because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.' " 42 U.S.C. § 2000e–3(a). Courts in this Circuit have recognized two methods of proof for retaliation claims. In order to succeed under the direct method on her Title VII retaliation claim, Plaintiff must "present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 382–83 (7th Cir. 2016) (citing *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 687 (7th Cir. 2010)). Under the indirect method, a plaintiff must prove that she "(1) engaged in a statutorily protected activity; (2) met h[er] employer's legitimate expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Turner*, 595 F.3d at 688 (internal citations omitted). Because Plaintiff and Defendant have framed their arguments under the direct method, the Court will begin by analyzing whether Plaintiff has established a *prima facie* case of discrimination under that approach.

Here, the Parties disagree as to whether Boesch engaged in a statutorily protected activity. Defendant maintains that Boesch never complained about discrimination, and cites portions of Boesch's deposition testimony where she claims that the dissolution of her sister's relationship with Weiss was the reason why she received a written warning for an outburst in the breakroom and missing work. Doc. 30-1, at 48 (J. Boesch Dep. at 186–87). However, Boesch also testified that "I told Sherman that I felt like I was being retaliated against and that it was not fair because men had other standards if they missed a lot of days. I mean, and to my knowledge,

I didn't miss a lot of days. But if they missed consecutive days, nobody had ever been written up." *Id*. at 184. Plaintiff has thus made a sufficient showing to establish the first element of her retaliation claim. The second element is also met—it is undisputed that Boesch suffered an adverse employment action when Sherman's terminated her employment.

The remaining hurdle Plaintiff must overcome requires her to show a causal connection between her statutorily protected activity and her termination. *Volling*, 840 F.3d at 382–83. To clear this hurdle, Plaintiff argues that (1) she complained of discrimination when she received a written warning for missing work when other employees who were male were not given warnings; (2) the complaint was protected activity; and (3) within 24 hours of making her complaint, "Boesch was fired for taking a folder from her sister's desk after she had departed employment that contained an employee resignation letter which Paul Sherman testified was not confidential." Doc. 40, at 34–35. The problem with Plaintiff's argument is that the only connection between her complaint and her termination is temporal, and "suspicious timing alone is insufficient to establish a genuine issue of material fact to support a retaliation claim." *Turner*, 595 F.3d at 687 (internal citations omitted). Notably, Plaintiff is *not* arguing that Sherman's decision to terminate her for taking personnel files without permission was a disproportionate response, or that a dispute exists as to whether she actually took the file or whether she had permission. Rather, Plaintiff's argument hinges on a purported inconsistency as to whether the files were "confidential." That argument, however, has already been addressed and rejected in the Court's analysis of her discrimination claim, *supra*.

**(4) Illinois Sales Representative Act**

Plaintiff does not respond to the arguments in Defendant's Motion regarding her Illinois Sales Representative Act commission claim. Pursuant to Local Rule 7.1(D)(2), her failure to

respond is deemed an admission. Summary judgment is therefore granted in favor of Defendant on Plaintiff's commission claim.

## CONCLUSION

For the reasons set forth above, Defendant's Motion [30] for Summary Judgment as to Plaintiff Julie Boesch is GRANTED.

Signed on this 30th day of November, 2017.

s/ James E. Shadid  
James E. Shadid  
Chief United States District Judge